Mrs. N. W. Ladd *vs.* Earl R. White, Admr.

Hancock.    Opinion December 19, 1920.

*Verdict for plaintiff.    Motion by defendant for new trial.    Questions of fact only involved.    Verdict not disturbed.*

This is an act of assumpsit brought to recover for meals furnished to George E. Patterson, and to his wife, Fannie B. Patterson.  There is no question of law involved or presented to the court for its consideration.  The defendant seeks a new trial upon the customary grounds, relying upon questions of fact.

The familiar and well established rule must be observed, that this court will not set aside a jury verdict upon questions of fact unless it is shown that there was manifest error in the verdict or that it was the result of bias or prejudice. In the case at bar the defendant has failed to sustain the burden laid upon him by this rule.

On motion.  This is an action to recover for meals furnished by plaintiff to defendant's intestate, and his wife, Fannie B. Patterson.  Plea, the general issue.  The jury returned a verdict of $1,205.24, for plaintiff.  Defendant filed a motion for a new trial. Motion overruled.

The case is very fully stated in the opinion.

*W. C. Conary,* for plaintiff.

*H. H. Patten, and Hale & Hamlin,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, JJ.

PHILBROOK, J.   This is an action of assumpsit brought against the administrator of the estate of George E. Patterson to recover for meals furnished to the deceased and to his wife, Fannie B. Patterson, the amount claimed being $1,680.00.  The plaintiff recovered a verdict of $1,205.24 and the defendant seeks, by motion, based on the customary grounds, to have that verdict set aside and a new trial granted.  No exceptions to any ruling or instruction appear.  The case was apparently tried with great care, so far as the introduction of evidence was concerned, and we are now called upon to say, after critical examination of that evidence, whether the jury so plainly erred, either as to liability or amount of damages, that the motion should be sustained.  We are to deal only with questions of fact, to invade a province in which, by long practice, and statutory provisions, the jury control, and then only for the purpose of determining whether manifest error is shown, or it appears that the verdict was the result of bias or prejudice.  *Hatch* v. *Dutch*, 113 Maine, 405.

Mr. Patterson died August 18, 1917.  The items in the plaintiff's writ are two in number.  The first charges for the meals furnished to the deceased from January, 1911, to August 18, 1917, the date of his death, a period of six years, seven and one-half months, or three hundred forty-two weeks at $2.50 per week, amounting to $855.00; the second charges for meals furnished to his wife from January, 1911, to July 31, 1916, five years and seven months, and from November, 1916, to August 18, 1917, nine and one-half months, making a total period, during which meals were furnished the wife, of six years, four and one-half months, or three hundred thirty weeks at $2.50 per week, amounting to $825.00, the two sums making a total of $1,680.00 which, as we have seen, was the plaintiff's claim.

The plaintiff presented no book charges, under the rules of evidence in cases of this character she could not testify, and her proof consisted only of such testimony as could be given by other witnesses.  She conducted a small restaurant and lunch counter in the town of Bucksport where, as it is claimed, the deceased and his wife obtained the meals, payment for which the plaintiff seeks

recovery. To cover the period of time for which the charges are made, and to prove the first branch of her case, namely, that the Pattersons had the meals, she calls three of her employees and one boarder. The time covered by the employees may be thus stated:

Fall of 1908 to Spring of 1912, by Grace Blaisdell; May, 1912, to October, 1912, by Florence Gross; October and November, 1912, by Laura Snowman; Fall of 1912 to Spring 1914, by Grace Blaisdell; June, 1913, to December, 1913, by Laura Snowman; June, 1914, to December, 1914, by Laura Snowman; June, 1915, to December, 1915, by Laura Snowman; December, 1915, to October, 1916, by Florence Gross.

Thus it will be seen that from December, 1914, to June, 1915, a period of about six months, and from October, 1916, to August 18, 1917, the date of Mr. Patterson's death, a period of about eight months, a total of about fourteen months, no employee testified that the Patterson's took meals from the plaintiff. The attempt to fill this gap is made by calling Mabel Robbins, who took dinners with the plaintiff from 1910 to the close of the period for which the Pattersons are charged. It would be unprofitable to quote from and completely analyze the testimony of each of these witnesses, but it may be fairly said that their testimony has some probative force in establishing the proposition that the Pattersons at least had dinners during much of the time for which the charges are made, and possibly suppers, except that period of fourteen months above referred to. The lack of evidence regarding this period may account for the amount which the jury deducted from the plaintiff's bill.

That meals were furnished to any considerable extent is denied by the defendant and it is also strenuously urged in defense that the friendly and social relations between the plaintiff and the deceased and the whole conduct between the parties was such, that whatever bounties were furnished to and partaken of by the deceased and his wife were gratuitous on the part of the plaintiff and so understood by all concerned. It appears from the testimony that the Pattersons were people in humble circumstances and received neighborly courtesies from their friends, especially during the last months of Mr. Patterson's life, when he was very ill, and the defendant not only says that all these meals, if any were furnished, were

in the nature of such courtesies, for which in part the Pattersons returned courtesies to the plaintiff, but that the plaintiff had distinctly said to Mrs. Sarah E. White, a sister of Mrs. Patterson, after the death of Mr. Patterson, that neither Mr. nor Mrs. Patterson owed her anything. In rebuttal the plaintiff denied emphatically that she ever made such a statement. The jury passed upon the credibility of the two women and their verdict sustained the plaintiff. It was also claimed that the plaintiff's suit resulted from a failure of any provision in her behalf by will, but the testimony of Mrs. Leach plainly discloses that what the plaintiff expected was that she should "get something from the estate for the board of Mr. and Mrs. Patterson." It also appears from the testimony of Laura Snowman that Mr. Patterson had offered to pay for meals but that Mrs. Patterson would usually say, "not now George, but some other time I will pay on the bill." In cross-examination the same witness testified as to an offer by Mr. Patterson to pay on Sunday, or some other day when an especially good dinner was served, and that Mrs. Patterson said, "not now George, I will settle with Aunt Belle," meaning the plaintiff. Mrs. Robbins also testified that Mr. Patterson told her that he intended to pay Mrs. Ladd for meals. The same witness stated that Mr. Patterson said a number of times, "she is going to get her pay; we will pay her well." Mr. Eldridge also testified that at one time, not long before his death, Mr. Patterson was worrying about certain bills and said, "I am owing Mrs. Ladd."

Without prolonging this discussion to any unnecessary length, it is the opinion of the court that there was sufficient testimony, notwithstanding that offered in defense, upon which a jury might find a verdict for the plaintiff upon both propositions, first that meals were furnished to the Pattersons, and second, that they expected to pay, and the plaintiff had the right to expect and did expect pay for the same.

The jury may have been somewhat liberal in the amount allowed, but they were practical men of affairs, saw the witnesses, heard them testify and rendered their honest opinion. The testimony does not disclose a basis of computation by which we can intelligently reduce the damages and the mandate will be,

*Motion overruled.*